## NASSAU SMELTING & REFINING WORKS, LTD. *v.* UNITED STATES.

**ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.**

No. 37.   Argued October 7, 1924.—Decided November 17, 1924.

1. The question whether the District Court, having jurisdiction under Jud. Code, § 24, of an action brought by the United States, has statutory power to entertain counterclaims by the defendant against the Government, involves the jurisdiction of the court as a federal court. P. 105.
2. A decision, rejecting the counterclaims as not within jurisdiction conferred by federal statute, is therefore reviewable here directly under Jud. Code, § 238. *Id.*
3. The objection to a suit against the United States is fundamental, whether it be in the form of original action, set-off or counterclaim, and jurisdiction in either case does not exist without specific congressional authority for it. P. 106.
4. Under the Dent Act, c. 94, §§ 1 and 2, 40 Stat. 1272, allowing suits against the United States on certain kinds of agreements not executed in the manner prescribed by law, jurisdiction of such petitions was confined to the Court of Claims exclusively. *Id.*
5. A party in the District Court who unsuccessfully sought adjudication under the Dent Act on agreements alleged not to have been executed in the manner required by law, was thereby precluded on writ of error here, from the position that they should have been adjudicated as contracts under Jud. Code, § 24, par. 20. P. 108.
Affirmed.

ERROR to a judgment of the District Court in an action brought by the United States to recover sums due for merchandise sold and delivered by it to the defendant. The amended answer admitted the allegations of the complaint and pleaded three separate and distinct set-offs or counterclaims each in an amount less than $10,000, for balances alleged to be due under agreements made during the late war and before November 12, 1918, under authority of the Secretary of War, for supplies used in the prosecution of the war. It was alleged that the Secretary had refused satisfactory· adjustment, and an award by the District Court was prayed, to be set off against the amount demanded by the United States, and, in case of an excess in favor of the defendant, judgment was prayed therefor. The trial court, on motion of the Government, dismissed the set-offs or counterclaims and granted judgment for the United States on the pleadings, for the full amount of its claim. Direct writ of error was prosecuted under Jud. Code, § 238.

*Mr. A. S. Gilbert,* for plaintiff in error, submitted.

Paragraph 20 of § 24, Jud. Code, comes from the so-called Tucker Act,—March 3, 1887, c. 359, § 2, 24 Stat. 505. The purpose of that act was to give to persons having claims against the United States for comparatively small amounts the right to bring suits in the courts of the United States in the districts where they and their witnesses reside without subjecting them to the expense and annoyance of litigating in a court located at Washington. *New York S. S. Co.* v. *United States,* 202 Fed. 311.

Unless jurisdiction be found in the Court of Claims, no action can be maintained under the Tucker Act (par. 20, § 24, Jud. Code,) except in those cases where Congress has expressly conferred jurisdiction on the District Courts, as under the Lever Act.

The construction which we urge for § 2 of the Dent Act in no way modifies the provisions of that section. Where the claim is in excess of $10,000, it must be prosecuted in the Court of Claims. Where it is under $10,000, it may be prosecuted either in the Court of Claims or in the District Court.

All of the legislation referred to in the opinion in *United States* v. *Pfitsch,* 256 U. S. 547, created a right to sue the United States where no right had theretofore existed. In all of those instances it was the primary purpose of Congress to permit a claim to be asserted. Accepting, as we must, the decision of this Court in the *Pfitsch Case* as finally settling the law that in cases involving claims under the Lever Act, the claims must be asserted in the District Court and appeal must be from the District Court to the Circuit Court of Appeals, it does not necessarily follow that that case is authority for the contention that, when Congress permitted the assertion of a claim against the United States, which could not theretofore have been asserted, and conferred jurisdiction on the Court of Claims, to make an award, it thereupon repealed, to that extent, par. 20, § 24, Jud. Code, a general act conferring jurisdiction on the District Court concurrently with the Court of Claims in cases where the claim asserted is less than $10,000.

The claims asserted by this plaintiff in error could not have been asserted at all prior to the enactment of the Dent Act. The contracts sued on by the plaintiff in error had not been formally executed in accordance with the statutes applicable to the execution of contracts by the United States. If the Dent Act had never been enacted and this plaintiff in error had asserted a claim either in the Court of Claims or in the District Court, it would have been met with the defense that the contracts had not been executed pursuant to the authority conferred on officers of the United States, and in the manner provided by law.

All that this legislation sought to do was to validate these contracts, hedging this validation about, however, by safeguards protecting the Government against improper claims. It in substance permitted the assertion of claims against the United States on contracts informally executed which otherwise could not have been asserted.

The mere fact that in some instances the framers of legislation had in mind claims of less than $10,000 as well as claims of over $10,000 and have made specific mention of the fact that claims under $10,000 might be prosecuted in the District Courts under par. 20, § 24, Jud. Code, does not necessarily indicate a purpose or intent to compel all claimants under the Dent Act, whether their claims be more or less than $10,000, to have their claims adjudicated solely and exclusively in the Court of Claims. There is no more reason for imposing a hardship on claimants against the United States under the Dent Act than there is in the case of any other claim against the United States.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This suit was brought by the United States against the Nassau Smelting & Refining Works in the United States District Court for the Southern District of New York, to recover $15,000, with interest at 6 per cent., for copper bands and pig lead sold and delivered. By its amended answer the defendant did not deny its obligation as claimed, but set up, as counterclaims, balances due from the United States to it of $6,023.81 for one delivery of copper bands, another of $5,836.42, and a third of

$2,576.09.  The averment in the answer is, as to each of these claims, that the agreement upon which the bands were furnished was not executed in the manner prescribed by law and so was embraced within the saving provisions of § 1 of the Act approved March 2, 1919, entitled "An Act To provide relief in cases of contracts connected with the prosecution of the war, and for other purposes," and known as the Dent Act (c. 94, 40 Stat. 1272).  The defendant's contention was that as each counterclaim was for less than $10,000, subdivision 20 of § 24 of the Judicial Code of the United States gave the District Court jurisdiction to find and award, by way of counterclaims herein, a fair and just compensation to the defendant from the United States.  The United States moved for judgment on the pleadings for the full amount claimed in the petition, without deduction of the counterclaims, and this motion was granted, the court holding it had no jurisdiction of suits against the United States under the Dent Act like those presented as counterclaims herein, either as original actions or as set-offs or counterclaims.  Judgment was accordingly entered on the complaint for the United States in the sum of $15,286.72. Proceedings in error were prosecuted, and the circuit judge, acting as a district judge, certified, conformably to the Judicial Code, § 238, that the jurisdiction of the court was in issue and that the order dismissing the set-offs or counterclaims was based solely upon the ground that the court had no jurisdiction to determine them.

It was suggested at the hearing in this Court that, as there was unquestioned jurisdiction of the suit by the United States, under the first paragraph of § 24 of the Judicial Code, the case could not be brought directly from the District Court to this Court on a certificate under § 238 of the Code as to the jurisdiction of the counterclaim.  But we think that unquestioned jurisdiction over the complaint does not prevent a certificate as to jurisdic-

19458°—25——11

tion of the new suit attempted in the form of a counter-
claim. The question is not one as to the introduction of
counterclaims as a mere matter of procedure. The objec-
tion to a suit against the United States is fundamental,
whether it be in the form of an original action or a set-off
or a counterclaim. Jurisdiction in either case does not
exist unless there is specific congressional authority for it.
Nor is there doubt that the question is one which involves
the jurisdiction of the District Court as a federal court
under the statutes of the United States, for the jurisdic-
tion of the District Court in this regard is wholly depend-
ent on such statutes.

The second question is whether such counterclaims as
are averred in the answer are authorized by par. 20 of
§ 24 of the Judicial Code. That paragraph provides that
the District Court of the United States shall have juris-
diction, concurrent with the Court of Claims, of all claims
not exceeding ten thousand dollars founded upon the
Constitution of the United States or any law of Congress,
or upon any regulation of an Executive Department, or
upon any contract, express or implied, with the Govern-
ment of the United States, or for damages, liquidated or
unliquidated, in cases not sounding in tort, in respect to
which claims the party would be entitled to redress
against the United States, either in a court of law, equity,
or admiralty, if the United States were suable. It is
argued that these counterclaims are each less than
$10,000 in amount and are founded on a law of Congress
and upon a contract, express or implied, with the United
States and do not sound in tort, and therefore are within
the power of the District Court to enforce them. The
fatal objection to this argument is that these claims are
based exclusively on the Dent Act (March 2, 1919, c. 94,
40 Stat. 1272, 1273). This act was passed to allow the
Secretary of War to adjust and discharge any agreement
entered into by any officer or agent acting under his

authority or that of the President, during the emergency of the war, and prior to November 12, 1918, with any person, firm or corporation for the production, manufacture or sale of equipment, materials, or supplies, or for services connected with the prosecution of the war, when the agreement had been performed in whole or in part, or expenditures had been made or obligations incurred upon the faith of the same by such person, firm or corporation prior to November 12th, and such agreement had not been executed in the manner prescribed by law. By § 2 of the act the Court of Claims is given jurisdiction, on the petition of the claimant described in § 1 of the act, to find and award fair and just compensation in such cases, if the claimant is not willing to accept the compensation offered by the Secretary of War. There is no other provision in the act for judicial action than this. This must be held to be an exclusive jurisdiction conferred upon the Court of Claims. This was the view of this Court as shown in *United States* v. *Pfitsch*, 256 U. S. 547, 553. In that case all the statutes which had been passed during the war, giving jurisdiction to various courts of the United States for judicial settlement of controversies with the Government, were considered and commented on, and among the four instances in which jurisdiction was said to be conferred only on the Court of Claims was the Dent Act. It is true that the question as to the operation of the Dent Act was not involved in the case. But the opinion in throwing light upon the effect of § 10 of the Lever Act (August 10, 1917, c. 53, 40 Stat. 276, 279), providing for suits in the District Courts in controversies arising thereunder, made a careful comparison of all the acts of the kind and a classification of them. We see no reason to change our opinion as to the construction of the Dent Act in this regard. The defendant below placed itself squarely within the requirements of the Dent Act and sought adjudication of its

claims on the ground that the agreements under which recovery was sought had not been executed in the manner prescribed by law. In this way it put itself outside the field covered by par. 20 of § 24 of the Judicial Code, and by its own admission limited itself to the remedy possible under the Dent Act. It is unnecessary for us to consider, therefore, whether, but for the Dent Act, it might have brought suit under the general language contained in par. 20 of § 24. The effect of the Dent Act was to limit it to the Court of Claims. The District Court, therefore, was right in holding that it had no jurisdiction of the counterclaims and in giving judgment on the pleadings for the Government.

*Affirmed.*