CITY OF SANTA CLARA,
CALIFORNIA, Plaintiff,

v.

Thomas KLEPPE, Individually and as Secretary of the Interior, and Gilbert Stann, Individually and as Commissioner of the Bureau of Reclamation, United States Department of the Interior, Defendants.

No. C–75–1574 SC.

United States District Court,
N. D. California.

Nov. 12, 1976.

Edwin J. Moore, City Atty., Santa Clara, Cal., for plaintiff.

James L. Browning, U. S. Atty., San Francisco, Cal., for defendant.

McCutchen, Doyle, Brown & Enerson, San Francisco, Cal., for Pacific Gas & Elec. Co.

## ORDER AND MODIFICATION OF JUDGMENT

CONTI, District Judge.

This matter is before the court on intervenor-defendant Pacific Gas & Electric Company's (PG&E) motion for reconsideration of a portion of this court's judgment entered on September 20, 1976. The portion in question reflects this court's ruling in Part II.D.(4) of its Decision in this case filed on July 23, 1976. The court denied PG&E's motion for summary judgment on its counterclaim against Santa Clara and ordered that the escrow agreement which was the subject of the counterclaim be continued in effect until such time as the Bureau of Reclamation reconsidered the power allocation scheme in issue in the suit.

PG&E's counterclaim against Santa Clara arose out of a contract executed in March, 1969, under which PG&E agreed to supply the City's excess power requirements at wholesale rates at such times as Santa Clara's share of Central Valley Project (CVP) power, as set by the Bureau of Reclamation, did not meet the City's total power requirements. As the Bureau began withdrawing power from Santa Clara in mid-1971, the share of the City's total requirements which had to be supplied by PG&E increased, and the utility billed the City for the difference. Rather than remitting the amounts due, Santa Clara deposited them in escrow every month upon receiving PG&E's bill, pursuant to an arrangement with the utility undertaken so as to preserve any rights the City might have against the federal government. It has been the City's position throughout this litigation that the Bureau's power withdrawals are illegal and therefore without effect, that the power received by the City to meet its total requirements is, in fact, CVP power, coming in over PG&E transmission lines, and that the money in the escrow fund is not owing to PG&E but, rather, to the federal government, since it is federal power which Santa Clara has been purchasing all along.

The court's Decision of July 23, 1976, has had the effect of perpetuating the escrow fund. Santa Clara continues to remit into the account an amount equal to its monthly bill from PG&E for its excess power requirements. As a result, the escrow account as of August, 1976, contained approximately $28,000,000.00 (PG&E's Supplemental Exhibit, filed October 1, 1976).

PG&E now moves that the entire amount contained in the escrow account be disbursed to it, and that future payments by Santa Clara earmarked for the account be paid directly to it. In the alternative, PG&E moves that a portion of the escrow account in an amount equal to the CVP price plus interest be disbursed to it and that future payments into the account be reduced by an amount equal to the CVP price, this amount to be paid directly to the utility. PG&E suggests that an amount equivalent to the CVP price is the "irreducible minimum" to which it will be entitled regardless of any potential re-allocation of power by the Bureau of Reclamation.

### A. *Jurisdiction over PG&E's Counterclaim.*

Preliminarily, Santa Clara contests PG&E's motion for reconsideration on the ground that this court lacks jurisdiction over PG&E's counterclaim regarding the escrow agreement. Santa Clara bases this contention on the theory that PG&E is a pendent party to this litigation and that as such this court lacks an independent basis of jurisdiction over it. Santa Clara relies on the recent Supreme Court case of *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The *Aldinger* case holds that in actions brought pursuant to 42 U.S.C. § 1983 a plaintiff may not implead as a defendant a party against whom only a state-law claim is asserted and over whom no independent basis of federal jurisdiction exists. The fact that a state-law claim

derives from the same nucleus of operative fact as a federal claim does not in itself confer federal jurisdiction over the party against whom the state-law claim is asserted.

■ The *Aldinger* case is not applicable here. PG&E sought to intervene as a defendant in this action pursuant, in part, to Rule 24(a)(2) F.R.C.P. This rule provides that an applicant may intervene in an action as a matter of right when he claims an interest relating to the property or transaction in question and is so situated that disposition of the action may as a practical matter impair his ability to protect that interest. This court permitted intervention, but did not specifically rule that it was proper under Rule 24(a)(2) F.R.C.P. The court now so rules.

■ By voluntarily intervening in this action under Rule 24, F.R.C.P., PG&E has submitted to the personal jurisdiction of this court. Further, by intervening as a matter of right, PG&E has become a party defendant to Santa Clara's original claim against the Bureau of Reclamation. It is undisputed that this court has subject matter jurisdiction over this claim. In addition, this court has ancillary jurisdiction over any counterclaim asserted by PG&E against Santa Clara which arises out of the same transaction or occurrence as Santa Clara's original claim. *See United States to Use of Foster Wheeler Corp. v. American Surety Co.,* 25 F.Supp. 700 (E.D.N.Y.1938), *aff'd,* 142 F.2d 726 (2d Cir. 1944); *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); 3B *Moore's Federal Practice,* ¶ 24.17[3.–1]; *Shapiro, Some Thoughts on Intervention Before Courts, Agencies and Arbitrators,* 81 Harv. L.Rev. 721, 724 (1968). This court rules that PG&E's counterclaim against Santa Clara arises out of the same transaction or occurrence which is the subject of Santa Clara's claim against the Bureau, and, further, that this court has ancillary jurisdiction over the counterclaim. The court also notes that the federal forum is the only forum wherein all of the claims of the parties arising from the Bureau's power

allocation scheme may be litigated together. This is a factor to be considered in determining whether jurisdiction exists. *See Aldinger v. Howard, supra* at 16, 96 S.Ct. at 2421.

#### B. *The Escrow Account.*

■ PG&E sets forth three arguments in support of its motion for reconsideration: (1) that PG&E has performed all of its contractual obligations to supply Santa Clara with power; (2) that a retroactive re-allocation of CVP power by the Bureau of Reclamation is legally impossible; and (3) that there is no need to continue the escrow fund to preserve the rights of the parties. Santa Clara attempts to rebut these arguments, and urges, particularly with respect to argument (2), that it does not seek a retroactive re-allocation of power. In addition, it urges that any redistribution of power by the Bureau should be treated as a "withdrawal" of CVP power previously "banked" with PG&E pursuant to Contract 2948A between the Bureau and PG&E.

The court recognizes that PG&E purchases the power which it supplies to Santa Clara in part from the Bureau of Reclamation and that the present escrow arrangement prevents PG&E from presently recouping its costs for this power. The court further recognizes that should the Bureau determine that all power supplied to Santa Clara by PG&E was, in fact, CVP power, PG&E will have to be compensated on some basis for its purchase of this power from the Bureau. Nevertheless, the paramount concern of this court is that the Bureau of Reclamation be given a free hand upon remand of this action to reconsider its power allocation scheme in light of the requirements of due process and to formulate standards and guidelines for the allocation of CVP power in accordance with this court's Decision of July 23, 1976. In view of this, the court will not rule upon any of the substantive arguments raised by the parties in connection with this motion. Rather, the court will reserve its ruling on these mat-

ters until such time as it becomes necessary to review any action taken by the Bureau of Reclamation.

However, it is the court's conclusion that the amount presently contained in the escrow fund is more than adequate to presently protect the rights of the parties. In view of this and in consideration of general equitable principles the court will order that twenty-five percent (25%) of the amount presently contained in the escrow account be paid to PG&E, that twenty-five percent (25%) of all future payments designated for deposit into the escrow account be paid directly to PG&E, and the remainder (75%) be deposited into the account. These payments to PG&E are to be subject to repayment upon a determination by the Bureau of Reclamation of the manner in which the power in question should be allocated and upon such terms as it directs.

Accordingly, PG&E's motion for reconsideration is denied. However, it is ordered that the court's judgment in this case is modified as follows:

Twenty-five percent (25%) of the amount presently contained in the escrow account shall be disbursed to PG&E, twenty-five percent (25%) of all future payments designated for deposit into the escrow account be paid directly to PG&E, and the remainder (75%) be deposited into the account. It is further ordered that the above amounts are to be paid to PG&E subject to repayment upon a determination by the Bureau of Reclamation of the manner in which the power in question shall be allocated and upon such terms as it directs.